UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In Re: | ) |
| | ) |
| David Eugene Green | ) Case No.   09-34626 |
| Lara Crowder Green | ) |
| | ) |
| Debtors | ) Chapter 11 |

**AMENDED DISCLOSURE STATEMENT OF**
**DAVID AND LARA GREEN**

    1.    Introduction.

    David and Lara Green (the "Debtors") have prepared and filed this disclosure statement ("Disclosure Statement") for the purpose of providing creditors with adequate information about the Debtors and their proposed plan of reorganization (the "Plan"), which has been filed with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), so that creditors may make an informed judgment with respect to the Plan and its approval. A copy of the Plan accompanies this Disclosure Statement.

    As a creditor, your acceptance of the Plan is important. In order for the Plan to be accepted, of those creditors voting, creditors holding at least two thirds in dollar amount and more than one half in number of the allowed claims of each class of creditors impaired under the Plan must vole to accept the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTORS, THE PLAN, OR THE VALUE OF THE DEBTORS' PROPERTY, ARE AUTHORIZED UNLESS CONTAINED IN THIS DISCLOSURE STATEMENT. ACCORDINGLY, NO REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD BE RELIED UPON IN EXERCISING YOUR RIGHT TO ACCEPT OR REJECT THE PLAN.

This information has not been audited. The Debtors therefore do not warrant or represent that this information is without inaccuracy, although great effort has been made to be accurate and there are no intentional misstatements in this statement.

W. R. Baldwin, III (VSB #16988)
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA  23226
Voice:  (804) 285-3888
Fax:  (804) 285-7779
Email:  billbaldwin@comcast.net
Counsel for Debtors

  2.  Background of the Debtors and Their Chapter 11 Case

  Prior to 2002 David Green was employed as senior vice president of sales for Open Plan Systems (a modular office furniture remanufacturer). During this time he became familiar with the business opportunities presented by the installation of commercial flooring and decided to create and run his own business. In 2002 he formed InterWork, Inc., a Virginia corporation. David was the president, director and person fundamentally in control of the corporation and served full time in that capacity. Lara Green served as CEO and as a director although this was not her primary employment (the Greens have young children and Lara has been the primary care giver).

  By 2006 InterWork had obtained $1.5 million in flooring sub-contracts with respect to state school construction projects. While superficially profitable, as the projects progressed Interwork learned that its responsible employee (not Mr. Green) had underbid the contracts with respect to the scope of labor; shortages of materials also adversely affected InterWork's ability to perform timely. As a result, InterWork faced cost overruns of some $900,000. Making matters worse, installation issues at the South Boston Middle School ($10,000 in materials, $20,000 in corrective labor and $8,000 for equipment issues) led to a loss of $38,000. Additionally, a key employee became seriously ill and was unable to work.

  Combining these factors with the slumping economy caused the Greens to conclude that InterWork could not be operated profitably, that there were no reasonable prospects to accomplish this end and the only proper course of action was to close the company. As both of the Greens held personal liabilities relating to InterWork as a result of their guaranty of the company's loan from Wachovia Bank, barring a significant change in fortune the Greens concluded they likely at some point would be required to seek relief under the Bankruptcy Code.

  On April 2, 2009 Wachovia Bank recovered confession of judgment against InterWork and the Greens in the Richmond Circuit Court, Case No. CL09001570. This judgment was docketed in Henrico County by abstract of judgment recorded May 8, 2009 in the sum of $347,853.14 and under Virginia law the docketing of the judgment against the Greens created a judgment lien against the Greens' jointly owned home residence in Henrico County. Less than ninety days after this date, however, the Greens filed their Chapter 11 case (on July 19, 2009). Since this filing occurred less than 90 days after the docketing of the judgment the judgment lien created in favor of Wachovia against the Green's residence in Henrico County is an avoidable preference.

  The Greens have closed Interwork, filed the final tax return and have turned over to Wachovia all of the assets of Interwork that were Wachovia's collateral; the status of Wachovia's recovery from its collateral is unknown.

  As the Greens' residence is owned by them as tenants by the entirety, under Virginia law a creditor would be required to hold a claim against both Mr. and Mrs. Green in order to recover from their residence. So far as is known to them Wachovia is the sole creditor to meet this criterion.

The Greens have gained new employment, but as employees rather than as entrepreneurs.

Because their debt (primarily the Wachovia judgment) made them ineligible for filing a case under Chapter 13 of the Bankruptcy Code, they filed this Chapter 11 case.

3. Post-Filing Operations:

a. The Greens' original objective for their Chapter 11 plan was to mirror the typical Chapter 13 plan by gaining financial stability through increased income and reduced expenses, and by paying into the plan for distribution to creditors the surplus of their income over current expenses over a sufficient time so that the creditors would receive significantly more than whatever distribution might come from a Chapter 7 liquidation. While they believed that result could come relatively early in the case (a year ago they believed that a confirmable plan of reorganization could be filed in December, 2009 or January, 2010), their circumstances have made that impossible.

b. David's Employment. David is employed by HMU Open Plan systems as assistant plant manager. He has not had a pay increase from HMU. He had hoped for a 3% pay increase to $7,300 per month starting January, 2011 (annual salary of $87,600), but his salary for 2011 will be reduced 10% to $75,000 instead. As a result, additional funds from his employment above current expenses are not be available to fund a plan.

c. Lara's Employment. Lara is employed as a salesperson for Intellisell, a software developer and marketing company for office furniture dealers and manufacturers. Because of child care and personal health issues, she has not been able to gain the income she had anticipated. Her monthly pay will increase to $1,470 effective January 1, 2011. An improving economy may mean significantly increased commission compensation but this, of course, is an unknown factor. As a result, while funds from her employment above expenses may become available, this is too speculative for purposes of confirmation of a Chapter 11 plan and the amount of any increase is not expected to be sufficiently large as to be material.

d. Accident and Medical Issues. The Greens post-filing business and income has been adversely affected by an automobile accident, by an illness suffered by David and by an injury to Lara.

(1) On July 4, 2009 an automobile accident (not caused by third parties) resulted in the complete loss of the Greens' Toyota 4 runner vehicle, boat trailer and significant damage to their 21' Wellcraft boat. The boat has not been used since that date, has not been repaired and is not economically repairable in the current economy. The boat is located in storage lot in Chester, Virginia and is believed at this time to have no true value. Insurance payments received for these losses in sum of $6,500 for the loss of the truck, $2,900 for the loss of the trailer and $8,900 for damage to the boat have been received. $4,875 of the insurance payment for the truck loss was paid in May, 2010 for a replacement vehicle (2001 Mitsubishi Montero). Insurance checks for approximately $11,800 are still being held.

3

    (2) The accident also is believed to have caused Lara a neck injury which was not immediately diagnosed. The injury has caused intense pain in her arm and shoulder and has led to significant uninsured medical expenses. Additionally, in spring 2010 Lara injured her calf muscle, incurred $225 in unreimbursed expenses at St. Francis hospital; two weeks later re-damaged the muscle and was then treated by a physician at West End Orthopedics. Additional costs included a $150 boot for rehabilitation. This muscle injury has recently healed but she still suffers pain from the accident.

    (3) David has been suffering since April 2009 (diagnosed in November 2009) with retro peritoneal fibrosis, which is an auto-immune disease that causes fibers to grow around his aorta, which carries with it very serious potential health effects. David's drug regimen has included intense steroid therapy which itself has caused adverse health effects; every quarter he is tested for blood and kidney invasion (the disease more commonly affects the kidney and can lead to kidney failure). He presently is undergoing Imuran drug therapy and the long range prognosis is unknown but David is optimistic. David's non-insured costs for this treatment have exceeded $5,000 since April 2009 and future costs are likewise unknown but are expected to be high.

  e. The Greens' Residence. The primary asset of the Greens is their residence, located at 9537 Heather Spring Drive in Henrico County.

    (1) When the Greens filed this case they valued the residence on their schedule A at $340,000, slightly less than the then amount of the Henrico County Assessment of $360,200 because of the condition of the residence. As disclosed by their Schedule D, the residence is encumbered by a validly recorded and perfected first deed of trust securing the principal sum of approximately $208,000 and a validly recorded and perfected second deed of trust securing the principal sum of approximately $80,000, for a total of $288,000.

    (2) Because of declining real estate conditions, Henrico County reassessed the residence effective October 30, 2009 at $311,900. The Greens believe this was as a result of general market conditions and that Henrico did not take into account significant repair and maintenance requirements discussed below.

    (3) The house has significant maintenance issues and needs repairs, which further depress its value. Altogether, the Greens estimate repairs of at least $25,000 are necessary before the house could be offered for sale with any expectation of a fair price and that, even if these repairs were done, the value of the house after payment of normal and customary sales expenses is no greater than the amount due on the two deeds of trust.

     ●the largest needed repair is to replace the deteriorated Masonite siding. The Greens estimate the total cost for this at $20,000 ($15,000 for replacement of the siding and $5,000 for repainting).
     ●there is damage to the front porch, estimated cost to repair Masonite of $250.00.

●the tile in the master bath requires replacement, estimate $750.00
●windows need replacement, estimated cost of $1500
●carpet in the master and other bedrooms must be restretched and carpet on stairway and in upstairs hall replaced, estimated cost of $1,000.
●the interior of the home requires repainting, estimate $1000.
●there is a crack in the slab in the garage for which repair is estimated to cost $1,000.

(4)    Even if the residence could be sold for its assessed value, a customary market real estate broker commission of 6% ($18,660 on a $311,000 sale and conveyancing taxes of $1,390 on a $311,000 sale) would reduce the net to approximately $290,000, just enough to pay off the deeds of trust.

(5)    A July, 2010, foreclosure sale of a comparable house in the same neighborhood (9529 Heather Spring Drive, Henrico, VA 23238) brought $211, 979.00 against an assessed value of $317,000.

(6)    As a result, the Greens believe the fair value of the house for purposes of their plan and 11 U.S.C. §506 is $288,000. The plan avoids the judgment lien of Wachovia Bank as a preference and reduces the secured amount of this claim (even without avoidance) to $0.00 as there is no value in the real property above the amounts of the first and second deeds of trust.

4.    Financial Information

a.    Present and Future Income and Expenses.

The original intention of the Greens was to use the surplus of income over expenses to fund their Chapter 11 plan in a manner similar to a Chapter 13 plan over an extended period, thus enabling a significant premium to unsecured creditors over the recovery that would be expected under at Chapter 7 liquidation. However, despite their hard work throughout the case the Greens have been unable to operate at a profit. Their average expenses per month of $7,500 (which includes the purchase of the 2001 Montero to replace their destroyed 4Runner) have exceeded their average net income of approximately $5500. The that Mr. Green will suffer a reduction in pay makes this approach impractical. While Mrs. Green's income is expected to increase, that increase is speculative. The Greens have used their 2008 income tax refund in the ordinary course of their business to fund the monthly shortfalls.

While expenses from reduced child care will be meaningful, they are not sufficient to support payments under a Chapter 11 plan.

b.    Carryback tax refunds.

Because of the significant losses suffered by Interwork, which have flowed through to the Greens (Interwork was a "sub S" corporation), the Greens received for tax year 2008 a post-

5

petition income tax refund of $16,883 and will shortly be receiving a refund for 2009 of $10,707. They estimate a refund for 2010 in a similar amount because of the Interwork losses.

   c.  Insurance Claims. The Greens hold $11,800 in uncashed insurance checks from the July, 2009 auto accident.

   d.  Creditors' Claims. Total claims of $579,882.22 have been filed as follows:

| Claim | Creditor | Amount Claimed | Type of Claim | Comment |
|---|---|---|---|---|
| 1 | Discovery Bank | $11,963.95 | unsecured | claim against David Green only |
| 2 | Department of the Treasury Internal Revenue Service | $0.00 | priority | amended prior claim of $298.89 to $0.00 |
| 3 | Stanley Stevens | $5,084.92 | unsecured | claim is a judgment against Interwork only, filed claim discloses no claim against either debtor |
| 4 | American Intersource as agent for T-Mobile | $248.69 | unsecured | |
| 5 | Wachovia Card Services | $17,001.26 | unsecured | appears to be joint claim but claim lacks documentation so this is not known |
| 6 | The Mosaic Tile Company of Virginia, Inc | $11,418.43 | unsecured | guaranty claim against David Green only |
| 7 | Wachovia Bank | $348,558.62 | unsecured | pre-petition judgment against David and Lara Green; claim is unsecured and judgment lien if claimed is an avoidable preference and is unsecured under 11 U.S.C. § 506 |
| 8 | Virginia Ear, Nose & Throat Associates, P.C. | $363.15 | unsecured | claim against David Green only |
| 9 | Forbo Linoleum Inc. | $11,623.18 | unsecured | claim against David Green only |
| 10 | American Honda Finance Corporation | $14,145.99 | secured | debt will be reaffirmed; collateral is 2007 Honda Odyssey Van |
| 11 | American Express Centurion Bank | $14,025.30 | unsecured | claim against David Green only |

| Claim | Creditor | Amount Claimed | Type of Claim | Comment |
|---|---|---|---|---|
| 12 | American Express Centurion Bank | $720.79 | unsecured | claim against David Green only |
| 13 | 2026-2032 Dabney Road - Henrico, LLC | $139,091.02 | unsecured | claim against David Green only; debtor estimates proper amount of claim as closer to $49,000 after application of 11 U.S.C. § 502(b)(6) |
| n/a | Bank of America | $3,384.56 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green on account of a guaranty |
| n/a | Capital One Credit Card - VISA | $9,171.97 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green only on account of a guaranty |
| n/a | Citicorp Credit Services, Inc. | $6,682.66 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green only |
| n/a | Frank D. Straus, DDS | $213.06 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green only |
| n/a | Henrico Doctors Hospital | $700.00 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green only |
| n/a | L. Fishman and Sons | $5,019.70 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green only |
| n/a | Mohawk Industries | $18,430.19 | unsecured | no proof of claim filed but listed in this amount in schedules; debtor David Green only |
|  | Total Claimed | $617,847.44 |  |  |

| Claim | Creditor | Amount Claimed | Type of Claim | Comment |
|---|---|---|---|---|
| | Estimated total Amount of Unsecured Claims Tentatively to be allowed: | $508,525.51 | | After adjusting 2026-2032 Dabney Road - Henrico, LLC claim to $49,000, removing Stanley Stevens $5,084.92 claim and removing America Honda Claim (because debt will be reaffirmed) $14,145.99 |
| | Total Principal of Secured Claims to be Allowed and Reaffirmed | $302,000 | | Includes first and second deed of trust loans on Greens' residence and Honda Odyssey loan. |

NOTICE: the Debtors reserve the right to object to any vote on this plan by the holder of an unsecured claim who did not file a timely proof of claim and to object to any distribution to such claim and to seek the disallowance of any such claim.

       e.       Executory Contracts. There are no material executory contracts.

       f.       Reaffirmations. The Greens will reaffirm the two mortgage loans on their residence as well as the loan for the Honda Odyssey. All these loans are current.

       e.       Administrative Claims and Expenses. The Greens are current in the payment of their US Trustee fees and all other administrative expenses and have paid same in the ordinary course of business. There are no filings for unpaid administrative expenses or claims. The Greens' counsel has agreed to serve without compensation for post-petition services so no attorneys fees will be due.

       g.       Priority Claims. There are no priority claims. The Internal Revenue Service filed a $298.89 claim July 28, 2009 and then amended that claim on November 13, 2009 in the sum of $0.00.

    5.       Liquidation Analysis

       a.       Under a Chapter 7 liquidation the creditors would receive no payments from the sale of the Greens' residence. The Greens have no other real or tangible personal property the disposal of which would generate any return for the creditors. If the Greens had filed under Chapter 7, their post-petition income would not have been property of the bankruptcy estate and, therefore, income tax refunds from post petition income would not be property of their bankruptcy estate.

       b.       The Greens have spent all of their employment income received during the case and used their 2008 refund to finance the shortfall in their monthly income.

8

      c.     The largest assets of the Greens are exempt from their bankruptcy estate. Mr. Green at filing held a $94,000 ERISA qualified account at Scott & Stringfellow; Mrs. Green held a $86,682 exempt retirement account at the same institution. No timely objection was filed to these exemptions and the same are proper in all respects.

      d.     From the $11,800 in uncashed insurance settlement checks and income tax refunds the Greens estimate that the maximum amount of any distribution to the creditors from the non-exempt assets of their estate would be at most $35,000-$40,000, consisting of approximately $20,000 from income tax refunds for tax years 2009 and 2010, the insurance check and remaining funds from the 2008 refund.

      e.     If this case were to be converted to a case under Chapter 7, a Chapter 7 trustee would be appointed to administer the case and the Chapter 7 trustee in all likelihood would retain an attorney for representation in the case. The Chapter 7 trustee would be entitled to a commission based on the total amount of funds in the estate as an administrative priority before any payments to the unsecured creditors. In contrast, there is no trustee's commission to be paid in this Chapter 11 case. The Chapter 7 trustee's attorney would be entitled to receive payment as an administrative priority as well.

   6.     Feasibility

The law requires the Court to find that a reorganization plan is feasible as a condition for confirming the plan. A plan is feasible if the Plan proponent (in this case the Greens) can perform their obligations under the Plan, and if confirmation will not likely be followed by either the liquidation of the Debtors or the need for further financial reorganization of the Debtors.

The Debtors believe their plan is feasible. It does not rely in any way on their future income to make any payments to their unsecured creditors. The primary source of funds for the payments to be made under the Plan will be monies already in hand, or that shortly will be in the Debtors' hands. To the extent that the insurance settlement checks and income tax refunds do not adequately fund the plan (and the Greens do not think these funds will be sufficient), David Green will use his exempt retirement assets to fund the plan.

The Debtor's have redoubled their efforts to reach financial stability where monthly income and outgo are even and believe they almost have reached this point. Accordingly, they believe that they will be able to operate going forward without a liquidation and without further financial reorganization or renewed bankruptcy filings.

   7.     Treatment under 11 U.S.C. § 1129

Because the plan provides for payment to unsecured creditors of an amount significantly in excess of any amount that would be payable under Chapter 7 case, The Greens hope and expect that the unsecured creditors will vote as a class to accept this plan.

If, however, the unsecured creditors do not vote to accept the plan, the Greens note that, as required by 11 U.S.C. § 1129 (a)(7)(A), the unsecured creditors will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that exceeds the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date.

Under 11 U.S.C. § 1129(a)(15), if a holder of an unsecured claim objects to the confirmation of the plan, the Greens will nevertheless to seek confirmation as the value of the property to be distributed under the plan is not less than their projected disposable income (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

8. Purpose of this Disclosure Statement

The Bankruptcy Code, 11 U.S.C. § 1125(a), defines "adequate information" as information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtors that would enable a hypothetical reasonable investor typical of holders of claims or equity interests of the relevant class to make an informed judgment about the plan of reorganization. The Debtors believe that this Disclosure Statement contains adequate information for holders to cast an informed vote to accept or reject the Plan and that this Disclosure Statement and the solicitation of acceptances comply with applicable provisions of the Bankruptcy Code (including sections 1125(a) and 1126(b)), the Federal Rules of Bankruptcy Procedure and non-bankruptcy law, to the extent applicable.

In general, there are two forms of treatment that may be provided to a holder of a claim or equity interest under a Chapter 11 plan of reorganization – "unimpaired" treatment and "impaired" treatment. Unimpaired treatment means that the legal, equitable and contractual rights of a holder of a claim or equity interest are unchanged under the Plan. Impaired treatment means that the legal, equitable or contractual rights of a holder of a claim or equity interest are changed under the Plan and can include situations where a holder of a claim or equity interest does not receive or retain any property under a plan.

This Disclosure Statement, together with the Plan, is being transmitted to all known eligible voters. Although there is no specified period during which the Debtor is legally required to keep the solicitation open, the Debtor will keep this solicitation open until the Voting Deadline.

Only impaired classes of claims and equity interests are entitled to vote on a plan of reorganization. The Plan designates four separate classes of claims, of which only one class, Class 4 Unsecured Creditors is impaired and is eligible to vote.

The solicitation of acceptances of the Plan will expire on April 8, 2011unless extended by the Debtor or by the Court.

9. The Proposed Plan of Reorganization.

The plan is simple and establishes the following classes and treatments of creditors:

Class 1: Administrative Claims. There are not expected to be any administrative claims. To the extent there are any, these claims will be paid in full on the Effective Date unless the holder of such a claim agrees to a different treatment.

Class 2: Priority Claims. These are claims under 11 U.S.C. § 507. There are no claims in this category to the knowledge of the Debtors.

Class 3: Secured Loans on Greens' Residence at 9537 Heather Spring Drive in Henrico County. These claims are unimpaired and the holders thereof are not eligible to vote on this plan. The claims will be allowed in full and the Greens will reaffirm these obligations. No payments will be made under the plan to these creditors; instead the Greens they will continue to make payments per the terms of the applicable loans. The class consists of Cenlar as successor to Taylor & Bean as to the first deed of trust loan and Citibank as to the second mortgage/credit line.

Class 4: Secured Loan on 2007 Honda Odyssey Van. This claim is unimpaired and the holder thereof are not eligible to vote on this plan. The claim of American Honda Finance Corp. will be in allowed in full and the Greens will reaffirm these obligations. No payments will be made under the plan to this creditor; instead the Greens will continue to make payments per the terms of the applicable loan.

Class 5: Allowed Unsecured Claims. Claims in this class are impaired. The Debtors presently estimate the allowed amount of claims in this class to be $508,000. This class will be paid pro-rata the sum of $60,000. This distribution represents approximately 12% of the anticipated allowed claims but exceeds significantly any possible distribution under Chapter 7 of the Bankruptcy Code

The Greens will retain their interest in their property to the extent not provided to be paid under the plan.

Effective Date and Dates of Payments

The Effective Date will be that date which is seven days after the order of the Bankruptcy Court approving this plan becomes legally final. In the event of an appeal, the Greens reserve the right to perform under this plan unless the appealing party seeks a stay of the execution of the plan and posts bond adequate for this purpose.

On the Effective Date or on an earlier date as the Debtors may determine in their discretion, the Debtors will pay the sum of not less than $20,000 pro-rata to the holders of the allowed unsecured claims. If any claim is then in dispute, then the such claim will be paid based upon the amount estimated by the Debtors to be the amount of the eventual allowed claim,

11

without prejudice to a "catch-up payment" to be made by the Debtors upon final resolution of such claim.

The Debtors will make a "catch up" payment within fifteen days of the entry of an order setting the amount of the allowed claim for any unsecured claim disputed by the Debtors.

The Debtors will make their final plan payment (the amount of $60,000 less plan payments previously made) within not more than fifteen days of the entry of an order setting the amount of the allowed claim for any unsecured claim disputed by the Debtors or at such earlier date as they deem proper.

To the extent the Debtors fund their plan with payments by exempt retirement assets of David Green, Mr. Green will make all required penalty payments and will make all required income tax payments without effect on the payments to be made to any Class of Creditors herein.

9.   Solicitation of Plan Approval

THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS CLOSE OF BUSINESS (5:00 P.M., EASTERN STANDARD TIME, ON _____, 2011 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR WITH THE APPROVAL OF THE BANKRUPTCY COURT. IN ORDER TO BE COUNTED, BALLOTS MUST BE RECEIVED BY MARCHANT, THORSEN, HONEY, BALDWIN & MEYER LLP (ATTN. W. R. BALDWIN, III), 5600 GROVE AVENUE, RICHMOND, VA 23226 ON OR PRIOR TO THE VOTING DEADLINE.

Per this Disclosure Statement and the accompanying Ballot, the Debtors are soliciting acceptances of the Plan from claimants eligible to vote. Your vote on whether to accept or reject the Plan is important. Although this Disclosure Statement summarizes the Plan, you should read the Plan in its entirety. To adopt the Plan, the Debtor must receive acceptances of the Plan from (1) claimants eligible to vote holding at least two-thirds (2/3) of the principal amount of each Class of Claims entitled to vote on the Plan actually voting on the Plan, and (2) more than one-half (1/2) in number of the holders of such Claims that actually vote on the Plan. Because only those holders who vote to accept or reject the Plan will be counted for purposes of determining acceptance or rejection of the Plan, the Plan could be approved by the affirmative vote of claimants eligible to vote holding significantly less than two-thirds (2/3) of the aggregate principal amount of each class of Claims entitled to vote on the Plan, and less than one-half (1/2) in number of the claimants eligible to vote with respect to each such Class. Even if the Plan is accepted by the Classes entitled to vote, it will remain subject to review by and approval of the Bankruptcy Court.

A COPY OF THE PLAN IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A AND IS INCORPORATED BY REFERENCE.

          Respectfully submitted,

          DAVID EUGENE GREEN
          LARA CROWDER GREEN

Dated: May 26, 2011          By:   /s/ W. R. Baldwin, III
                         Of Counsel

W. R. Baldwin, III, VSB #16988
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA 23226
Voice: (804) 285-3888
Fax: (804) 285-7779
Counsel for Debtors